IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No.__:____-CV-_____-___

BRADY WAYNE ALLEN,　　　　　)
individually and on behalf of all　　)
others similarly situated,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiff,　　　)　　**CLASS ACTION COMPLAINT**
　　　　　　　　　　　　　　　　)　　**(JURY TRIAL DEMANDED)**
v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
THE UNIVERSITY OF NORTH　　　)
CAROLINA SYSTEM, through its　)
governing body, the BOARD OF　)
GOVERNORS OF THE　　　　　　)
UNIVERSITY OF NORTH　　　　　)
CAROLINA, and UNIVERSITY OF　)
NORTH CAROLINA　　　　　　　)
CHARLOTTE, a constituent　　　　)
institution,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendants.　　)

Plaintiff Brady Allen ("Plaintiff") by and through undersigned counsel, brings this action

against The University of North Carolina System and its constituent institution, University of

North Carolina Charlotte ("Defendants" or the "University") on behalf of himself and all others

similarly situated, and makes the following allegations based upon information, attorney

investigation and belief, and upon Plaintiff's own knowledge:

## PRELIMINARY STATEMENT

1.  Plaintiff brings this case as a result of Defendants' decision to close campus,

    constructively evict students, and transition all classes to an online/remote format as a

1

result of the Novel Coronavirus Disease ("COVID-19").

2. While closing campus and transitioning to online classes was the right thing for Defendants to do, this decision deprived Plaintiff and the other members of the Classes from recognizing the benefits of in-person instruction, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3. Defendants have either refused to provide reimbursement for the tuition, fees and other costs that Defendants are no longer providing, or have provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Class for their loss.

4. This action seeks refunds of the amount Plaintiff and other members of the Classes are owed on a pro-rata basis, together with other damages as pled herein.

5. Plaintiff is not suing to recover monies paid by taxes to the University; rather, Plaintiff files suit against the Board of Governors of The University of North Carolina System, a body politic and corporate that may be sued, for specific disgorgement of fees and monies paid by students and their parents, guardians, and families for access and services not received.

**PARTIES**

6. Defendant, The University of North Carolina System, is the multi-campus public university system for the state of North Carolina, consisting of 17 constituent institutions throughout the state.

7. The University of North Carolina System is governed by the Board of Governors of the University of North Carolina as established by Chapter 116 of the North Carolina

2

General Statutes.

8. The Board of Governors of the University of North Carolina is a body politic that is able and capable in law to bargain, sell, grant, alien, or dispose of and convey and assure to the purchasers any and all such real and personal estate and funds as it may lawfully acquire when the condition of the grant to it or the will of the devisor does not forbid it; and shall be able and capable in law to sue and be sued in all courts whatsoever; and shall have power to open and receive subscriptions, and in general may do all such things as are usually done by bodies corporate and politic, or such as may be necessary for the promotion of learning and virtue.

9. The Board of Governors is vested with the statutory authority to delegate any part of its authority over the affairs of any institution to the board of trustees or, through the President, to the chancellor of the institution in any case where such delegation appears necessary or prudent to enable the institution to function in a proper and expeditious manner. The Board may delegate any part of its authority over the affairs of The University of North Carolina to the President in any case where such delegation appears necessary or prudent to enable The University of North Carolina to function in a proper and expeditious manner. Any delegation of authority may be rescinded by the Board at any time in whole or in part.

10. Defendant University of North Carolina Charlotte is a constituent institution of The University of North Carolina System, and is located and operating in Mecklenburg County.

11. Upon information and belief, Defendants are eligible to receive federal stimulus under the CARES Act. The CARES Act directs that approximately $14 billion dollars be

distributed to colleges and universities based upon enrollment and requires that

institutions must use at least half of the funds they receive to provide emergency financial

aid grants to students for expenses related to the disruption of campus operations due to

COVID-19.  In its April 20, 2020 update, the University proclaimed its anticipated

funding to total around 24 million.[1]

12. Plaintiff is an individual and a resident and citizen of the state of North Carolina.

13. Plaintiff is currently enrolled as a full-time student in Defendants' undergraduate

program, studying finance, economics and religious studies.

14. Plaintiff has paid substantial tuition for the Spring 2020 semester either out of pocket or

by utilizing student loan financing or otherwise.

15. There are hundreds, if not thousands, of institutions of higher learning in this country.

16. Some institutions of higher learning provide curriculum and instruction that is offered on

a remote basis through online programming which do not provide for physical attendance

by the students.

17. Defendants' institution offers in person, hands on curriculum.

18. Plaintiff and members of the Proposed Tuition Class did not choose to attend another

institution of higher learning, or to seek an online degree, but instead chose to attend

Defendants' institution and enroll on an in-person basis.

19. Common sense would dictate that the level and quality of instruction an educator can

provide through an online format is lower than the level and quality of instruction that

can be provided in person.

20. Moreover, the true college experience encompasses much more than just the credit hours

---

[1] https://emergency.uncc.edu/health-advisories/coronavirus-information/coronavirus-campus-updates

4

and degrees.  The college experience consists of:

     i.     Face to face interaction with professors, mentors, and peers;

     ii.     Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;

     iii.     Student governance and student unions;

     iv.     Extra-curricular activities, groups, intramurals, etc.;

     v.     Student art, cultures, and other activities;

     vi.     Social development and independence;

     vii.     Hands on learning and experimentation; and

     viii.     Networking and mentorship opportunities.

21. Defendants have already recognized the inherent difference in value between online and in-person education.

22. Even before the COVID-19 pandemic, Defendants offered an online degree track, called their distance education program, alongside their standard on-campus degree program.

23. Although these same programs, upon information and belief, confer the same degree, Defendants charge different costs of tuition.

24. Indeed, the cost of tuition for an online degree from the University is roughly 18% cheaper than the tuition for the same degree earned on campus:[2]

25. Plaintiff's education has changed from in-person hands on learning to online instruction.

---

[2] Tuition per semester, for the Fall 2019 – Spring 2020 academic year, for NC Residents on campus was $1,906.00 for 12 or more credit hours (see, https://ninercentral.uncc.edu/sites/ninercentral.uncc.edu/files/media/Documents/Undergraduate_MainCampus_Tuition_and_Fees_2019-20_Formatted.pdf); whereas, tuition for students in the Distance Learning program was only $1,548.00 for 12 hours and an additional $129.00 for every credit hour thereafter (see, https://ninercentral.uncc.edu/sites/ninercentral.uncc.edu/files/media/Documents/DistanceEd_Undergraduate_Tuition_Fees_2020Summer.pdf).

5

26. Plaintiff's online instruction is not commensurate with the same classes being taught in person. For example, not all courses are even being taught live through online instruction; rather, some classes are pre-recorded and available for Plaintiff to view but not participate in, and in some instances, professors are merely posting assignments online with no video instruction at all.

27. Plaintiff's course of study is not even included in the traditional distance education program at UNCC, which is indicative that finance, economics and religion are not contemplated by the University to be well-suited for online learning.[3]

28. The University openly acknowledges the deficiencies of online learning. Its March 27, 2020 Newsletter included an article authored by Professor Florence Martin, in which she proclaimed: "*There's work to be done! When you teach face-to-face, you can provide instructions and work with the responses from your students in a real-time dialogue that's quite different from an online environment. . .. Activities designed for the classroom may not transfer well to an online course. Collaborative choices that work well in a face-to-face setting may look different online . . .. Online learning requires a different skill set compared with being a face-to-face learner. . .. While there are challenges to online learning, we've also made significant advancements in recent years in the technology that supports it.*" (See, Inside UNC Charlotte Newsletter, Issue 59, March 27, 2020, A Beginner's Guide to Online Teaching and Learning, Professor Florence Martin). [4]

29. In addition to tuition, Plaintiff was required to pay certain fees, including but not limited to optional fees and the following mandatory fees:

[3] https://distanceed.uncc.edu/degrees
[4] https://inside.uncc.edu/news-features/2020-03-23/beginner's-guide-online-teaching-and-learning

6

a. Education and Technology Fee;

b. Health Service Fee;

c. Transportation Services Fee;

d. Safety and Security Fee;

e. Transportation Services for the campus shuttle system and other community transportation; and

f. University Fees.

30. The mandatory University Fees are specifically designated by the University to cover non-academic student services, such as the student union, recreational facilities, student organizations, newspapers, and entertainment programs, and other services.[5]

31. Upon information and belief, Defendants also charge a number of optional fees for additional on-campus services and facilities.

32. As a result of being moved off campus, Plaintiff no longer has the benefit of the services for which these fees have been paid.

**JURISDICTION AND VENUE**

33. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

34. This Court has personal jurisdiction over Defendants because Defendants are domiciled in North Carolina and conduct business in North Carolina.

---

[5] https://ninercentral.uncc.edu/billing-payments-refunds/tuition-and-fees/explanation-fees

35. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendants are a body politic domiciled and doing business in this District.

**FACTUAL ALLEGATIONS**

36. Upon information and belief, Defendants' Spring term began with the first day of classes on or about January 11, 2020.[6]

37. Upon information and belief, Defendants' Spring term was scheduled to conclude with the last day of examinations on or about May 5, 2020, with exams taking place May 5 – 12, and commencement ceremonies on May 7 - 13, 2020.[7]

38. Defendants' scheduled a "Spring Weekend" on Thursday, April 2nd and Friday, April 3rd.[8]

39. Accordingly, Defendants' Spring semester was scheduled and contracted to consist of approximately 119 days.

40. Defendants first notice concerning the Coronavirus was published on January 24, 2020, at that time Defendants stated they were closely monitoring the Coronavirus outbreak and attested that the "University has established protocols to respond to infectious diseases. We are prepared to act quickly in the event there are reports of symptoms of or exposure."[9]

---

[6] https://registrar.uncc.edu/sites/registrar.uncc.edu/files/media/5%20Year%20Calendar%20-%Final%202022-2023.pdf
[7] Id.
[8] Id.
[9] https://emergency.uncc.edu/health-advisories/coronavirus-information/coronavirus-campus-updates

8

41. As a result of the COVID-19 pandemic, Defendants announced on March 11, 2020 that the University was moving to online instruction "whenever possible" but that some classes, such as those with labs, would continue to require in-person instruction and attendance; likewise, events and gatherings of 50 or more people were cancelled or rescheduled.[10]

42. Chancellor, Philip L. Dubois, wrote the UNC Charlotte Community on March 12, 2020, to confirm a cross-divisional team had been meeting since mid-January to "assess, plan and prepare the University's response to the COVID-19 outbreak." He further stated that UNC-Charlotte's plans were, in some respects, <u>more restrictive than the guidance provided by the UNC System Office</u>. Chancellor Dubois emphasized that classes were not cancelled and stated that the University was "*committed to preserving the quality of our students' education this semester, even if the instruction is delivered in an unconventional format.*"[11]

43. Also, on March 12, 2020, the University announced that all in-person classes that could not transition to remote delivery were suspended for the Week of March 16 -20th and directed to move to online/ remote delivery by March 23rd.[12]

44. On March 12th, the University announced that bus capacities were reduced by 50 percent to accommodate social distancing. Additionally, all University Recreation facilities and the Student Activity Center were closed as of Sunday, March 14th.[13]

45. On March 16th the University announced that all on-campus residential students were

---

[10] Id.
[11] Id.
[12] Id.
[13] Id.

"strongly encouraged" to return to their permanent residences.[14]

46. The Chancellor again wrote the University community on March 17th confirming that all classes, including lab sections, would be online or remote effective March 23rd through the remainder of the semester. Residence halls were closed, and all on-campus students were required to leave the residence halls "*as soon as is practicable and no later than 5 p.m. Friday, March 20th*." The Chancellor stated that was important for students to leave as soon as possible and take only essential belongings with them.[15]

47. Also, on March 17th, the university announced that all events scheduled through Conference, Reservations, and Event Services were canceled through the academic semester, as well as all university events with 50 or more people.[16]

48. On April 13th the University announced changes to its Academic Honors policy; specifically, an exception would be made allowing students with 9 credit hours in courses with letter grades, rather than 12, to be eligible for the Chancellor's List or Dean's List. The intention was expressly to allow students to accept a Pass grade in some courses, but its practical impact is diminishment of these prestigious honors. Moreover, the value of any degree issued on the basis of online or pass/fail classes will be diminished for the rest of their lives.

49. Defendants have refused and continue to refuse to offer any pro-rated tuition discounts as a result of moving classes online.

50. Although Defendants are still offering some level of academic instruction via online classes, Plaintiff and members of the proposed Tuition Class have been and will be

[14] Id.
[15] Id.
[16] Id.

10

deprived of the benefits of on campus learning as set forth more fully above.

51. Although Defendants have refused and continue to refuse to reduce tuition for Spring semester students, they have announced that students expecting to take Summer classes in person (who will now be forced to take them online) will be charged the distance education rate as opposed to the normal rate for such classes.[17]

## Summer 2020 - Main Campus

- Rates are per semester.
- **All courses for Summer 2020 are online, and will be charged at the Distance Education rate.**
- Tuition and fees are billed by the credit hour for summer terms, including credits over 12 hours.

52. Upon information and belief, the only difference between Defendants' decision to discount online classes for the Summer and not discount online classes for the Spring is that Defendants have already collected tuition for the Spring Semester and the Spring Semester students have no recourse, whereas Defendants have not yet collected tuition for the Summer term and Defendants know many students will not agree to pay full price tuition for online classes during that upcoming term.

53. Likewise, Plaintiff and members of the proposed Fees Class have been and will be deprived of utilizing services for which they have already paid, as set forth in Paragraphs 29-30 above.

54. To date, Defendants have not announced any plans to discount these fees.

55. Defendants' decision to not discount these fees stands in stark contrast to their prior course of conduct, namely that they do not and have never charged the mandatory University Fee for students in the distance education program.[18]

---

[17] https://ninercentral.uncc.edu/billing-payments-refunds/tuition-and-fees/undergraduate-tuition-fees
[18] https://ninercentral.uncc.edu/sites/ninercentral.uncc.edu/files/media/Documents/DistanceEd_Undergraduate_Main Campus_Tuition_and_Fees_2019-20_Formatted.pdf

## UNDERGRADUATE

| | 1 Credit Hour | 2 Credit Hour | 3 Credit Hour | 4 Credit Hour | 5 Credit Hour | 6 Credit Hour | 7 Credit Hour | 8 Credit Hour | 9 Credit Hour | 10 Credit Hour | 11 Credit Hour | 12 Credit Hour |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tuition NC Resident | 129.00 | 258.00 | 387.00 | 516.00 | 645.00 | 774.00 | 903.00 | 1,032.00 | 1,161.00 | 1,290.00 | 1,419.00 | 1,548.00 |
| Tuition Non NC Resident | 583.00 | 1,166.00 | 1,749.00 | 2,332.00 | 2,915.00 | 3,498.00 | 4,081.00 | 4,664.00 | 5,247.00 | 5,830.00 | 6,413.00 | 6,996.00 |
| Ed & Tech Fee | 21.00 | 42.00 | 63.00 | 84.00 | 105.00 | 126.00 | 147.00 | 168.00 | 189.00 | 210.00 | 231.00 | 252.00 |
| ID Fee | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 | 7.50 |
| Safety and Security Fee | 1.00 | 2.00 | 3.00 | 4.00 | 5.00 | 6.00 | 7.00 | 8.00 | 9.00 | 10.00 | 11.00 | 12.00 |
| UNC System Assoc Fee | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.25 | 0.25 | 0.25 | 0.50 | 0.50 | 0.50 | 0.50 |
| **Total Cost - NC Resident** | 158.65 | 309.65 | 460.65 | 611.65 | 762.65 | 913.75 | 1,064.75 | 1,215.75 | 1,367.00 | 1,518.00 | 1,669.00 | 1,820.00 |
| **Total Cost - Non NC Resident** | 612.65 | 1,217.65 | 1,822.65 | 2,427.65 | 3,032.65 | 3,637.75 | 4,242.75 | 4,847.75 | 5,453.00 | 6,058.00 | 6,663.00 | 7,268.00 |

Special Fees (per term):

| | |
|---|---|
| College of Arts & Architecture Student Fee | $ 125.00 |
| College of Computing & Informatics Student Fee | $ 112.50 |
| College of Engineering Student Fee | $ 150.00 |
| College of Health & Human Services Student Fee | $ 125.00 |
| Experiential Learning / Co-op | $ 60.00 |
| International Student Fee (Visa type F or J) | $ 100.00 |
| Matriculation Fee* (new students only) | $ 100.00 |

*Charged only in the first term a student is both admitted and registered for classes

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

**The Tuition Class:**

All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester who were denied live in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class:**

All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

57. Excluded from the Classes are The Board of Governors of the University of North Carolina and any of their respective members, affiliates, parents, subsidiaries, officers,

12

directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

58. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

59. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

60. The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believes there are thousands of members of the Class, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendants' records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

61. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    i.    Whether Defendants engaged in the conduct alleged herein;

    ii.    Whether there is a difference in value between online distance learning and live in-person instruction;

    iii.    Whether Defendants breached their contracts with Plaintiff and the other members

13

of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and live in-person instruction;

iv.  Whether Defendants were unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and live in-person instruction;

v.  Whether Defendants breached their contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services the fees were intended to cover;

vi.  Whether Defendants were unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services the fees were intended to cover;

vii.  Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

viii.  Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

ix.  The amount and nature of relief to be awarded to Plaintiff and the other Class members.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

62. Plaintiff's claim is typical of the other Class member's claims because, among other things, all Class members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.

14

### Adequacy: Fed. R. Civ. P. 23(a)(4)

63. Plaintiff is an adequate Class representative because his interests do not conflict with the interests of other members of the Class she seeks to represent. Plaintiff has retained counsel competent and experienced in complex litigation; and Plaintiff intends to prosecute the action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

### Superiority: Fed. R. Civ. P. 23(b)(3)

64. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

65. Even if Class members could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

### Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

66. To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

15

## Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

67. The University has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the Class members as a whole.

### FOR A FIRST COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT
### (Plaintiff and Other Members of the Tuition Class)

68. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

69. Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

70. Plaintiff and the Tuition Class entered into contracts with the University which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, the University would provide live in-person instruction in a physical classroom.

71. Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester either out-of-pocket or by using student loan financing or otherwise.

72. The University breached the contract with Plaintiff and the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, without reducing or refunding tuition accordingly.

73. The University retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

74. Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendants' breach, including but not limited to being deprived of the

16

value of the services the tuition was intended to cover, namely live in-person instruction in a physical classroom.

75. As a direct and proximate result of Defendants' breach, Plaintiff and the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the difference between the value of the online learning which is being provided versus the value of the live in-person instruction in a physical classroom that was contracted for.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Plaintiff and Other Members of the Tuition Class)**

76. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

77. Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

78. The University has received a benefit at the expense of Plaintiff and other members of the Tuition Class to which it is not entitled.

79. Plaintiff and other members of the Tuition Class paid substantial tuition for live in-person instruction in physical classrooms and did not receive the full benefit of the bargain.

80. Plaintiff and other members of the Tuition Class conferred this benefit on Defendants when they paid the tuition.

81. Plaintiff and other members of the Tuition Class did not confer this benefit gratuitously.

82. Defendants have realized this benefit by accepting such payment.

83. Defendants have retained this benefit, even though Defendants have failed to provide the access and services for which the tuition was collected, making Defendants' retention unjust under the circumstances.

17

84. Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

85. Defendants should be required to disgorge this unjust enrichment.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT
### (Plaintiff and Other Members of the Fees Class)

86. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

87. Plaintiff brings this count on behalf of himself and other members of the Fees Class.

88. Plaintiff and the Fees Class entered into contracts with the University which provided that Plaintiff and other members of the Fees Class would pay certain fees for or on behalf of students and, in exchange, the University would provide access and services related to those fees, such as access to student activities, athletics, wellness centers, libraries, etc.

89. Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester either out-of-pocket or by using student financing, or otherwise.

90. The University breached the contract with Plaintiff and the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, and closing most campus buildings and facilities.

91. The University retained fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain.

92. Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendants' breach, including but not limited to being deprived of the value of the benefits and services the fees were intended to cover.

18

93. As a direct and proximate result of Defendants' breach, Plaintiff and the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the pro-rata amount of fees that was collected but for which access and services were not provided.

### FOR A FOURTH COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Plaintiff and Other Members of the Fees Class)

94. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

95. Plaintiff brings this count on behalf of himself and other members of the Fees Class.

96. The University has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

97. Plaintiff and other members of the Fees Class paid substantial student fees for on campus benefits and services and did not receive the full benefit of the bargain.

98. Plaintiff and other members of the Fees Class conferred this benefit on Defendants when they paid the fees.

99. Plaintiff and other members of the Fees Class did not confer this benefit gratuitously.

100. Defendants have realized this benefit by accepting such payment.

101. Defendants have retained this benefit, even though Defendants have failed to provide the access and services for which the fees were collected, making Defendants' retention unjust under the circumstances.

102. Equity and good conscience requires that the University return a pro-rata portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

103. Defendants should be required to disgorge this unjust enrichment.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, pray for judgment in their favor and against Defendants as follows:

a.    Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

b.    Declaring that Defendants are financially responsible for notifying the Class members of the pendency of this action;

c.    Declaring that Defendants have wrongfully kept monies paid for tuition, and fees;

d.    Requiring that Defendants disgorge amounts wrongfully obtained for tuition, and fees;

e.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendants from retaining the pro-rated, unused monies paid for tuition, and fees;

f.    Scheduling a trial by jury in this action;

g.    Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

h.    Awarding pre and post judgment interest on any amounts awarded, as permitted by law; and

i.    Awarding such other and further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

[signature on following page]

20

This 27th day of April, 2020

Respectfully Submitted,

**ANASTOPOULO LAW FIRM, LLC**

BY __/s/ Travis D. Hilka_____ _
      Travis D. Hilka
      N.C. Bar No.: 43400
      Eric M. Poulin (*Federal Admission Pending)*
      N.C. Bar No.: 43861
      Roy T. Willey, IV (*Special Appearance Pending*)
      Anastopoulo Law Firm, LLC
      32 Ann Street
      Charleston, SC 29403
      (843) 614-8888
      Fax: (843) 494-5536
      travis@akimlawfirm.com
      eric@akimlawfirm.com
      roy@akimlawfirm.com

**ATTORNEYS FOR PLAINTIFF(S)**

21